IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| HENRY CLIFFORD BYRD, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:18CV332 |
| | ) | |
| DAVID MILLIS, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, brought a Petition [Doc. #1] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On November 4, 2015, Petitioner was convicted by a jury of rape of a child by an adult offender, first-degree sexual offense, and taking indecent liberties with a child. (Petition, § 5.) He then received two consecutive sentences of 300 to 420 months of imprisonment and another consecutive sentence of 33 to 49 months. (Id. § 3.) Petitioner filed a direct appeal, but his convictions and sentence were upheld. State v. Byrd, No. COA17-288, 2017 WL 5146814 (N.C. Ct. App. Nov. 7, 2017) (unpublished), rev. denied, 370 N.C. 583 (2018). He then filed the current Petition in this Court. Respondent opposes the Petition with a Motion for Summary Judgment [Doc. #17] and an accompanying Brief [Doc. #18]. Also pending is a Motion for Summary Judgment [Doc. #24] filed by Petitioner, a Motion to Amend [Doc. #28] seeking to amend Petitioner's Response [Doc. #22] to Respondent's Motion for Summary Judgment, and a Motion by Petitioner [Doc. #29] seeking leave to file under 28 U.S.C. § 2241 based on two

recent cases decided by the United States Court of Appeals for the Fourth Circuit addressing federal criminal convictions.

Regarding Petitioner's Motion seeking to amend his response, the Court will grant that Motion and consider the amendment. As for the Motion to file under § 2241, Petitioner cites the cases of United States v. Wheeler, 886 F.3d 415 (4th Cir. 2018), cert. denied, ___ U.S. ___ 139 S. Ct. 1318 (2019), and Lester v. Flournoy, 909 F.3d 708, 715 (4th Cir. 2018). Those cases involve the ability of persons convicted of criminal charges in federal court to file under § 2241 in very narrow circumstances when relief regarding their federal convictions is not available under 28 U.S.C. § 2255. These cases in no way allow Petitioner to file claims challenging his convictions in the state court under § 2241 or relate to his case in any way. Further, Petitioner has been able to file and pursue all of his claims under § 2254 and they will be considered under that statute. There would be no purpose for any duplicative filing or consideration under § 2241. Petitioner's Motion will be denied and this case will proceed only under § 2254. The Court will now turn its attention to the pending Motions for Summary Judgment.

## I. Facts

The basic facts of the case, as set out by the North Carolina Court of Appeals on direct appeal, are as follows:

> On 23 March 2013, ten-year-old J.M. was at New Bethel Baptist Church in Winston-Salem, readying for her role in the Easter play. J.M. was accompanied by multiple family members, including her great-grandmother, her mother, her grandfather, and J.P., her ten-year-old cousin. Defendant was also a member of this church.

J.M. was wearing a dress, a sweater, tights, and a belt. Before the play, J.M. went to the kitchen downstairs to look for a knife to add another hole in her belt. When the play was about to start, J.P. went to go look for J.M. Unable to find her, J.P. informed their great-grandmother, Ruby Cain, about J.M.'s absence. Ms. Cain and J.P. went downstairs to the church's fellowship area, where there is a kitchen, a dining area, and men's and ladies' restrooms. At the bottom of the stairs, there is a door to the kitchen and a hallway leading to the restrooms and dining area. Ms. Cain noticed the kitchen lights were off, and the door was locked. As she moved around toward the other entrance of the kitchen, a set of double doors, she heard movement inside.

Though the statements of J.P. and Ms. Cain differ to some degree, both stated that the kitchen lights were turned off, Defendant was adjusting his zipper and/or belt, Defendant stated he "didn't do anything to her [J.M.]," and J.M.'s clothing was disheveled, with her dress tucked up in her belt or tights.

J.M. was upset, crying and screaming that the Defendant had raped her. Defendant followed Ms. Cain and J.M. up the stairs, and asserted that he had not hurt J.M. or done anything to her. Defendant was separated from J.M. and the police were called. J.M's grandfather, Gregory Cain, assaulted Defendant and chased him out of the church.

J.M. told both her mother and the paramedics that she was experiencing pain in her vaginal area. The responding officer overheard J.M. say, "He raped me." J.M. described to the officer how Defendant had followed her into the kitchen, pulled down her tights, pulled her onto the floor, "pulled his thing out" and "put it in [her] private." Then Defendant got up and told J.M. not to tell anyone what happened, as Ms. Cain and J.P. arrived. J.M. later complained that Defendant had previously raped her multiple times, perhaps every Sunday, and had forced her to perform oral sex one time in the bathroom downstairs. J.M. had never told anyone about these other, earlier instances because Defendant had threatened to kill her if she told.

Defendant voluntarily went to the police department and submitted to an interview on the evening of the incident. He stated that he was in the downstairs bathroom at the church, and J.M. was standing outside the door when he stepped out. She asked to see his phone. Once he handed her the phone, she ran with it into the kitchen. The kitchen was dark, and he heard his phone drop

3

and break. When Defendant turned the lights on, he saw J.M. with her tights pulled down, touching herself.

In an interview after his arrest, Defendant expanded on his memory of events on 23 March 2013, adding that J.M. had called him "Jake" as she was touching herself in the kitchen. As Defendant tried to leave the kitchen, J.M. grabbed his crotch.

J.M. was examined by a sexual assault nurse examiner (SANE). The rape kit did not produce any hair or DNA identified with Defendant. J.M. was more withdrawn at her later interview with a forensic social worker than during the interviews on the day of the incident, but re-stated that Defendant "put his private in [her] private." J.M.'s mother told the social worker that J.M. was in special classes, due to cognitive deficits. The social worker noted that J.M. was emotionally and cognitively on the level of a four- or five-year-old. J.M.'s mother also indicated behavioral problems had worsened after the incident, and J.M. was now too fearful to return to church.

Byrd, 2017 WL 5146814, at *1-2.

## II. Petitioner's Claims

Petitioner denominates ten claims for relief in his Petition and Attached Brief. The first[1] of these is that the trial court violated Petitioner's rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution by improperly admitting testimony from several witnesses concerning prior statements made to them by the alleged victim in the case without establishing a proper basis for admission or making findings of fact and conclusions of law on the record. (Petition, § 12, Ground One.) The second is that Petitioner

---

[1] This claim is listed first in the Petition, but second in the attached Brief. In fact, all of the four claims listed on the Petition form itself are set out in a different order in the Brief. For the purposes of this opinion, the Court will organize the claims in the order they appear in the Petition. Petitioner's fifth through ninth claims appear only in the Brief. His tenth claim is set out in a separate attachment to the Petition.

was denied "the right to be indict[ed] by an impartial and unbias[ed] grand jury" because the Detective R.E. Williams provided the grand jury with "prejudicial extraneous information" in the form of testimony that differed from that introduced in Petitioner's trial. (Id. Ground Two.) Petitioner's third ground for relief alleges prosecutorial misconduct in the form of "perjured testimony [used] to obtain the Petitioner's conviction." (Id. Ground Three.) Ground Four of the Petition asserts Petitioner's "[a]ctual and factual innocence" of the crimes for which he was convicted. (Id. Ground Four.) Petitioner's fifth claim is another claim of prosecutorial conduct based on allegations of presenting perjured testimony, as well as for indicting and prosecuting Petitioner despite his actual innocence. (Petitioner's Brief at 73-84.[2]) Petitioner's sixth claim returns to the grand jury process and alleges that his "right to be indicted by an impartial and unbias[ed] grand jury" was violated when grand jurors learned "extremely prejudicial extraneous information." (Id. at 85.) Petitioner's seventh claim is that the trial court violated his rights by allowing a witness Reverend Kendall Jones, to read aloud into the record a letter written by Petitioner but delivered to Reverend Jones by Detective Williams, rather than through the mail. (Id. at 94-95.) Petitioner's eighth claim asserts that publicity surrounding his trial deprived him of a fair trial. (Id. at 95-96.) Petitioner's ninth claim for relief argues that he did not receive proper notice under North Carolina statutory law that he would receive an aggravated sentence or possibly be treated as a sexually violent predator. (Id. at 96.) Finally, in a tenth claim for relief set out in an attachment to the Petition,

---

[2] All pinpoint citations to the record refer to the page number listed in the Court's electronic filing system, rather than any page numbers placed on the documents by the parties.

Petitioner alleges that he was improperly denied the right to present DNA evidence at his trial, denied the chance to put into evidence that the child he was convicted of raping had contracted a sexually transmitted disease that Petitioner himself did not have at the time of his arrest, and not allowed to present evidence theorizing who else could have transmitted the infection to the child. (Petition, Attach.)

In addition to the ten claims contained in the Petition and accompanying documents, Petitioner also filed what the Court treated as an Amended Petition [Doc. #16] raising what he labels as an eleventh claim for relief. That issue is lengthy, rambling, and almost impossible to decipher into a coherent claim. However, it appears to be composed entirely of claims or parts of claims related to witness testimony, Confrontation Clause issues, actual innocence, and prosecutorial misconduct raised in Petitioner's previous claims. Therefore, it will rise or fall with those claims.

### III. Standards of Review

This Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. "Clearly established Federal law" includes only "'holdings, as opposed to the dicta,'" of the United States Supreme Court. White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Howes

6

v. Fields, 565 U.S. 499, 505 (2012)). A state court decision is "contrary to" United States Supreme Court precedent if the state court decision either "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different" from the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision involves an "unreasonable application" of Supreme Court case law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"). "[E]ven 'clear error' will not suffice." White, 572 U.S. at 419 (citing Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003)). "Rather, 'as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. at 419-420 (quoting Harrington v. Richter, 562 U.S. 82, 103 (2011)). Finally, this Court must presume state court findings of fact correct unless clear and convincing evidence rebuts them. 28 U.S.C. § 2254(e)(1).

Here, at least as to the nine claims in the Petition and supporting Brief, Petitioner presented the substance of his claims to the state courts in his direct appeal. In fact, he contends that his claims in this Court are all exhausted, "there being no new issues to be raised by this Petitioner." (Petitioner's Brief at 5.) Therefore, the Court will apply the deferential

7

standards set out above. Further to the extent that Petitioner did not raise his claims to the state courts or they were not adjudicated on their merits, the outcome of the case would not change.

## IV. Analysis

### 1. Procedural Bar

Respondent's first argument in favor of summary judgment is that all of Petitioner's claims are procedurally barred because "[a]lthough Petitioner raised constitutional claims in pre-trial motions, he did not raise them during trial and the [North Carolina Court of Appeals] therefore found them waived on appeal . . . [t]hus, all of Petitioner's federal constitutional claims, whether explicitly or implicitly raised in all of his Grounds for Relief, i.e., are now procedurally barred from federal habeas review." (Respondent's Brief [Doc. #18] at 3 (citations omitted).) In support of this proposition, it cites and quotes language from the North Carolina Court of Appeals to the effect that "Defendant failed to raise any of his constitutional arguments before the trial court, and 'constitutional issues cannot be raised for the first time on appeal.'" (Id. (citing Byrd, 2017 WL 5146814, at *4)).

A review of the opinion of the North Carolina Court of Appeals reveals that it did not impose the broad procedural bar as stated by Respondent. That court divided the analysis portion of its opinion into three separate subsections with lettered headings. Subsections A and B dealt with Petitioner's claims concerning witness testimony and prosecutorial misconduct. The opinion addressed those claims on the merits with no reference to any procedural bar. Id. It then moved on to subsection C which bears the heading "C. Grand

8

Jury." Id. Immediately below that heading is the following paragraph, which also contains the language quoted by the State:

> Defendant purports to assign error to the impartiality of the grand jury. It appears the only basis for Defendant's claim is the returned indictments and conjecture concerning what evidence was given at the grand jury. Grand jury proceedings are, by law, secret. N.C. Gen. Stat. § 15A-623(e) (2015). At his motion hearings, Defendant did not present any evidence to justify piercing this veil of secrecy, nor any legal argument to show the grand jury was not impartial. It appears that Defendant is misinformed of the role of the grand jury and the burden of proof required for an indictment. Further, Defendant failed to raise any of his constitutional arguments before the trial court, and "constitutional issues cannot be raised for the first time on appeal." State v. Wright, 200 N.C. App. 578, 584, 685 S.E.2d 109, 114 (2009), appeal dismissed 363 N.C. 812, 693 S.E.2d 142 (2010). We dismiss Defendant's challenge to the grand jury, and do not consider the merits of any arguments which are not preserved, and are not properly before us. See id.

Id. The court then moves on to address remaining issues raised by Petitioner, again addressing and rejecting them on the merits and not referring again to any procedural bar. Id. at *4-5.

Based on the context of the North Carolina Court of Appeals' use of the procedural bar language relied upon by the State, it is clear that it applied that bar only to Petitioner's claims regarding the grand jury and not to all of his claims as maintained by the State. Therefore, the Court will consider the possible application of a procedural bar in the present proceeding, but only as to Petitioner's second and sixth claims for relief, which allege violations of his rights related to the grand jury proceedings.

"Where a petitioner fails to comply with a state procedural requirement, such as the requirement of contemporaneous objection at trial to preserve an issue for appeal, and the failure provides adequate and independent grounds for the state court's denial of relief, federal review of the issue will also be barred where the state has expressly relied on procedural

9

default." Byers v. Hathaway, No. 3:07cv290, 2010 WL 5092247, at * 11 (W.D.N.C. Sept.7, 2010) (unpublished) (citing, inter alia, Coleman, 501 U.S. at 722, Harris v. Reed, 489 U.S. 255 (1989), Murray v. Carrier, 477 U.S. 478 (1986), and Wainwright v. Sykes, 433 U.S. 72 (1977)). The North Carolina Court of Appeals, in denying Petitioner's grand jury claims, clearly relied on Petitioner's procedural default based on his failure to object. Therefore, those claims are procedurally barred from review in this Court unless Petitioner can meet the familiar cause and prejudice standard or show a fundamental miscarriage of justice sufficient to excuse his default. See McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000) ("Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice.").

> "[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded [his] efforts to raise the claim in state court ... [such as] interference by officials that makes compliance with the State's procedural rule impracticable [or] a showing that the factual or legal basis for a claim was not reasonably available ...." McClesky v. Zant, 499 U.S. 467, 493–94 (1991) (internal brackets, citations, ellipses, and quotation marks omitted) (emphasis added). . . . Moreover, well-settled authority holds that ignorance of the law, even on the part of a pro se petitioner, does not qualify as cause to excuse default. See Holloway v. Smith, No. 95–7737, 81 F.3d 149 (table), 1996 WL 160777, at *1 (4th Cir. Apr. 8, 1996) (unpublished) ("[The petitioner] does not meet the cause and prejudice standard because unfamiliarity with the law and his pro se status do not constitute adequate justification to excuse his failure to present the claim earlier ...."); Wilson v. Johnson, No. 1:08CV794 (LMB/TRJ), 2009 WL 2243708, at *3 (E.D. Va. July 22, 2009) (unpublished) ("Courts universally hold that the fact that a petitioner is untrained in the law or unfamiliar with a court's procedural rules does not provide a basis for establishing cause.").

10

Morton v. Perry, No. 1:16CV1028, 2017 WL 223004, at *3 (M.D.N.C. May 19, 2017) (unpublished). Here, Petitioner cites to no external cause that could excuse the procedural default of his grand jury claims. Therefore, he cannot demonstrate the cause necessary to excuse his default of those claims.

As for a fundamental miscarriage of justice,

When a petitioner raises a gateway innocence claim, it must be supported by "new **reliable** evidence." Schlup [v. Delo], 513 U.S. [298] at 324, 115 S.Ct. 851 [(1995)] (emphasis added). However, in its consideration of a petitioner's Schlup gateway innocence claim, the district court "must consider 'all the evidence' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.' " House [v. Bell], 547 U.S. [518] at 538, 126 S.Ct. 2064 [(2006)] (quoting Schlup, 513 U.S. at 327–28, 115 S.Ct. 851).

. . .

Ultimately, the district court must determine whether "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 328, 115 S.Ct. 851. Or, as this Court put it, "to satisfy the Schlup standard, a petitioner must . . . demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice." Teleguz [v. Pearson], 689 F.3d [322] at 329 [(4th Cir. 2012)]. Only then may the district court reach the merits of the petitioner's procedurally defaulted claims. House, 547 U.S. at 538, 126 S.Ct. 2064.

The Supreme Court has underscored that "the Schlup standard is demanding" and permits merits review only in "extraordinary" cases. House, 547 U.S. at 538, 126 S.Ct. 2064 (quotation marks omitted). See also McQuiggin v. Perkins, —— U.S. ——, 133 S.Ct. 1924, 1936, 185 L.Ed.2d 1019 (2013) ("We stress once again that the Schlup standard is demanding. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.") (quotation marks and citation omitted). At the same time, though, the Schlup standard does not require absolute certainty about the petitioner's innocence. Rather, the petitioner must demonstrate that more likely than not, in light of new and

11

reliable evidence, no reasonable juror would find him guilty beyond a reasonable doubt. House, 547 U.S. at 538, 126 S.Ct. 2064.

Teleguz. v. Zook, 806 F.3d 803, 808-809 (4th Cir. 2015).

Here, Petitioner maintains his innocence and raises actual innocence arguments, both as a defense to the procedural bar and as an attempted standalone claim in his fourth claim for relief. However, while claims of actual innocence exist as possible gateways that will allow procedurally defaulted claims to proceed, the United States Supreme Court has not recognized them as separate claims upon which relief can be granted. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404–405 (1993)). Therefore, although the Court will consider Petitioner's actual innocence arguments, it will do so only in relation to the procedural default of his grand jury claims. Petitioner's fourth claim for relief should be denied to the extent that he attempts to raise actual innocence as a standalone claim.

Turning now to Petitioner's actual innocence arguments, Petitioner points to no new reliable evidence supporting his innocence. Instead, he points only to evidence existing and available at the time of his trial and argues that he should not have been convicted in light of that evidence or that evidence which would have supported his defense was improperly excluded by the trial court. This is not an "actual innocence" argument within the meaning of that terms as used in the cases cited above. In the end, Petitioner presents no such argument, but instead raises what are more properly characterized as sufficiency of the evidence arguments or arguments that his rights were violated when evidence was improperly excluded. They do not establish Petitioner's "actual innocence" so as to place his case into the "extraordinary" category of cases where a procedural bar can be avoided due to a miscarriage

12

of justice. Petitioner's grand jury claims, which are his second and sixth claims for relief, are procedurally barred from review in this Court and should be denied as such.

### 2. Claim One--Confrontation Clause Violation

Petitioner's first claim for relief alleges that the trial court violated his rights under the Confrontation Clause by admitting testimony concerning what he characterizes as "the out-of-court hearsay testimonial statements" of the victim given to "Det. Robert E. Williams, Officer C.T. Munden, [the] alleged victim's J.M's mother and grandmother, and [a] forensic social worker." (Petitioner's Brief at 18.) Petitioner also claims that these admissions violated N.C.R. Evid. 803 and 804 because the requirements of those rules were not met prior to admission of the victim's statements.

Regarding this last contention, that the trial court violated North Carolina's Rules of Evidence, the Court notes that contentions resting solely on alleged violations of state law are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62 (1991); Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000). Further, "the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Grundler v. State of North Carolina, 283 F.2d 798, 802 (4th Cir. 1960); accord Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993). Therefore, Petitioner's claim turns entirely upon his contention that the state court's admission

13

of the victim's statements to third parties violated his rights under the Confrontation Clause.

Regarding the Confrontation Clause, the United States Supreme Court has held that

> when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. See California v. Green, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). It is therefore irrelevant that the reliability of some out-of-court statements " 'cannot be replicated, even if the declarant testifies to the same matters in court.' " Post, at 1377 (quoting United States v. Inadi, 475 U.S. 387, 395, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)). The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004). Here, the victim in the case, who was also the declarant of the statements to which Petitioner objects, appeared at trial and was subject to cross-examination by Petitioner. (Respondent's Exhibits [Doc. #8], Ex. 4, Trial Tr. Vol. III at 524-552.) Therefore, no Confrontation Clause violation could have occurred regarding the victim's statements. This means that the state court's denials of Petitioner's contentions otherwise were not contrary to, nor an unreasonable application of Supreme Court precedent regarding the Confrontation Clause, and Petitioner's first claim for relief should be denied.

### 3. Claim Three--Prosecutorial Misconduct/Perjured Testimony

Petitioner's next remaining claim for relief is his third claim, in which he alleges prosecutorial misconduct based on the use of perjured testimony. As evidence of the alleged perjury, Petitioner cites to a lengthy list of what he claims are contradictory or inconsistent statements by the victim to various witnesses and in her trial testimony. In order to establish such a claim, Petitioner must show that the challenged testimony was false, that the prosecution knew that the testimony was false, and the prosecution allowed the false testimony

14

to pass into evidence without correction. <u>Boyd v. French</u>, 147 F.3d 319, 329-30 (4th Cir. 1998). Such an occurrence violates a defendant's right to due process. <u>Id.</u> at 330. However, "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." <u>United States v. Griley</u>, 814 F.2d 967, 971 (4th Cir. 1987).

In addressing Petitioner's claim of perjured testimony, the North Carolina Court of Appeals, although not specifically citing to federal case law, rejected Petitioner's claims by stating that Petitioner "appears to assert any testimony that is inconsistent with his statements was false or perjured, but offers no proof beyond the apparent inconsistencies in the statements. . . . In this case, as in most cases, inconsistencies may be shown in the witnesses' testimonies and statements. After all the evidence was presented, the jury resolved all inconsistencies in the evidence, reached a unanimous verdict, and convicted Defendant on all charges." <u>Byrd</u>, 2017 WL 5146814, at *4. This holding is congruent with the standards just set out. It also aptly describes Petitioner's claim of perjured testimony before this Court and the appropriate outcome of that claim. Petitioner spends twenty-two pages of his brief listing allegedly perjured statements of the victim or other witnesses based on comparisons of those statements to their own prior statements or to the testimony of other witnesses or evidence in the record. (Petitioner's Brief at 50-72.) However, in the end, despite the length of the list, it is still only a matter of Petitioner pointing to inconsistencies in testimony which were resolved by the jury. The inconsistencies do not serve as proof that prosecutors presented perjured testimony in his case. Therefore, the decision of the North Carolina Court of Appeals in

15

rejecting his claim was neither contrary to, nor an unreasonable application of established federal law. Petitioner's third claim for relief should be denied.

### 4. Claim Four--Actual Innocence

Petitioner's next claim is that he is actually and factually innocent of the crimes for which he was convicted. As stated above, Petitioner cannot raise a freestanding claim based on actual innocence. However, Petitioner's allegations, which he sets out at length, really amount to a claim that his accuser should not be believed in light of her testimony compared to her inconsistent statements and other evidence in the record. (Petitioner's Brief at 34-44.) To the extent that Petitioner is simply attempting to retry his case in a habeas proceeding or have this Court reach a conclusion different from the jury in his case, he cannot do so. To raise a constitutional violation cognizable in a habeas proceeding, Petitioner would have to show that the evidence presented at trial was insufficient to convict him. In a habeas corpus action, the standard of review for a claim of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in the original). A court reviewing the sufficiency of the evidence "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." <u>United States v. Tresvant</u>, 677 F.2d 1018, 1021 (4th Cir. 1982). It has further been held that "circumstantial evidence may support a verdict of guilty, even though it does not exclude every reasonable hypothesis consistent with innocence." <u>United States v. George</u>,

16

568 F.2d 1064, 1069 (4th Cir. 1978).   The standard is obviously rigorous, however, as the Supreme Court has reiterated, "the writ of habeas corpus has historically been regarded as an extraordinary remedy."  Brecht v. Abrahamson, 507 U.S. 619, 633 (1993).

Petitioner does not point to any particular element which the prosecution failed to prove.  Instead, he essentially argues that the entire assault to which the victim testified simply did not occur, i.e. that he never sexually assault her.  However, the victim testified at trial, as described in the facts by the North Carolina Court of Appeals, that the assault did occur, that Petitioner raped her, and that he had previously forced her to perform oral sex on him.  There are, as Petitioner points out, some inconsistencies that exist in her statements or between her statements and the testimony of other witnesses.  However, this is to be expected given that the victim was a ten-year-old functioning at the level of a four- or five-year-old at the time of the assaults, which occurred more than two years prior to Petitioner's trial.  It was up to the jury to evaluate these inconsistencies and determine the credibility of the victim's testimony in light of her age and deficits.  As stated by the Court of Appeals in deciding Petitioner's perjured testimony claim, the jury resolved those inconsistencies and reached a unanimous verdict convicting Petitioner.  Evidence in the record supports that conviction.  Therefore, he cannot establish his fourth claim for relief and it should be denied.

5. Claim Five--Prosecutorial Misconduct/Prosecuting Petitioner Despite his Innocence

Petitioner's fifth claim for relief is yet another claim of prosecutorial misconduct.  To some extent, he again relies on allegations of the use of perjured testimony.  These allegations fail for the reasons set out above in relation to Petitioner's third ground for relief.  Petitioner

17

also alleges that the State improperly prosecuted him despite his innocence. This is really a reformulation of his fourth claim for relief and it fails for similar reasons. Again, Petitioner has not shown actual innocence and, in fact, sufficient evidence existed for a jury to conclude that he did assault the victim. No violation of Petitioner's rights could have occurred based on his indictment and the continuing of the prosecution where such evidence existed. Petitioner's claim is simply a restatement of prior claims and is without merit for the same reasons. It should be denied accordingly.

### 6. Claim Seven--Improper Reading of a Letter Into Evidence

Petitioner's next remaining claim for relief argues that the trial court erred in allowing Reverend Jones to read into evidence a letter written by Petitioner and addressed to Reverend Jones. Petitioner complains that Jones was allowed to read the letter into evidence despite the fact that it was not delivered to him in the U.S. mail. (Petitioner's Brief at 94.) Petitioner also states that the letter was presented with redactions, which prejudiced him in an unidentified manner. (Id. at 95.)

It is not clear exactly what type of constitutional claim Petitioner intends to raise with these allegations, but they constitute yet another claim that the state trial court erred in admitting evidence. As set out above, such allegations can only support a claim on federal habeas review in "circumstances impugning fundamental fairness or infringing specific constitutional protections." Grundler, 283 F.2d at 802. No such circumstances exist in the present case.

Testimony from Petitioner's trial shows that Detective R.E. Williams testified at Petitioner's trial that he received a call from an officer at the Forsyth County Detention Center saying that staff had intercepted a letter written by Petitioner. (State's Exhibits, Ex. 4, Trial Tr. Vol. 3 at 690-91.) Williams retrieved that letter and signed for it. (Id. at 691.) The envelope showed that it was mailed by Petitioner to Reverend Kendall Jones Senior, 1016 North Trade Street, Winston-Salem. (Id. at 692.) The envelope was sealed at the time Williams received it, but he opened it to find a twelve-page letter bearing the signature "H. Byrd." (Id.) Williams copied the letter and kept the originals in evidence storage until trial, but delivered a copy to Reverend Jones along with a typed form which Reverend Jones signed at delivery. (Id. at 692-93.) Corporal Jason Johnson, who worked at the Detention Center and was familiar with Petitioner's handwriting from other dealings with Petitioner, testified that the handwriting on the envelope and letter appeared to be Petitioner's writing and that the signature on the letter appeared to be Petitioner's as well. (Id. at 698-703.) Finally, Reverend Jones testified and identified the original letter as the letter that he received a copy of from Detective Williams. (Id. at 717-718.) He then read from the letter. In the letter, Petitioner claimed that he was in a bathroom of the church urinating when the victim entered and began rubbing herself sexually before touching his penis and asking to suck it. (Id. at 719-20.) Petitioner denied touching the victim in a sexual manner and wrote that he only ushered her out of the bathroom while trying to redress himself. (Id. at 720.) He claimed that the victim continued to rub herself and expose herself to him and that she took his cellular telephone and ran into the darkened

19

church kitchen. (Id.) He stated that he was in the kitchen attempting to retrieve his telephone when discovered by the victim's great-grandmother. (Id. at 720-21.)

In the end, the State produced the letter, established a chain of custody, produced a witness identifying Petitioner as the author of the letter and envelope, and had the intended recipient of the letter read it. Petitioner points to no specific constitutional violation other than to claim that the introduction of the letter was a "back-door way of compelling the Petitioner to testify against himself." (Petitioner's Brief at 95.) Petitioner does not explain this statement. He may mean that the State introduced his own statements in the letter against him, but this was not a violation of his rights, as the statements were in no way compelled. He may also mean that the introduction of the evidence against him caused him to feel the need to testify in his own defense. If so, this is true of the evidence introduced in many trials. It is not a violation of a defendant's constitutional rights. In no way was the introduction of the letter in the circumstances described above an act that impugned the fundamental fairness of the trial. Again, the letter consisted of Petitioner's own words and, in any event, those words were intended by him to be exculpatory. Petitioner also mentions unspecified redactions to the letter in a conclusory fashion, but fails to support or explain this statement. In the end, the introduction of the letter did not violate Petitioner's rights, and the North Carolina Court of Appeals' denial of this claim on direct appeal was not contrary to or an unreasonable application of clearly established Federal law. Petitioner's seventh claim for relief should be denied.

20

### 7. Claim Eight--Pretrial Publicity

Petitioner's eighth claim for relief states that he was denied his right to a fair trail due to publicity surrounding his trial, which included disclosure of the fact that he was a registered sex offender at the time of his alleged crimes against the victim in this case. (Petitioner's Brief at 95-96.) This claim appears to be entirely conclusory in nature. Petitioner points to no evidence that the jurors were prejudiced against him by any media coverage. In fact, both Petitioner and the State had ample opportunity to question potential jury members during a voir dire session covering nearly 150 pages of the trial transcript. (State's Exhibits, Ex. 4, Trial Tr. Vol. 3 at 312-455.) At some points, they did ask about pretrial publicity, whether generally or specifically. (Id. at 343, 394, 416.) Thus, Petitioner had ample opportunity to explore any potential prejudice and develop the record on that point. He did not do so. The claim he brings now is entirely conclusory and should be denied as such. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992).

### 8. Claim Nine--Failure to Provide Fair Notice at Sentencing

Petitioner's ninth claim for relief is that the State did not provide him notice of sentencing enhancements, as required under N.C. Gen. Stat. §§ 15A-1340.16(a6) and 14-208.20. Petitioner simply raises this claim without any specific description or argument, citing to no facts and pointing to no prejudice. (Petitioner's Brief at 96.) It is not even clear how he claims the lack of notice harmed him. The first statute cited, § 15-1340.16(a6) deals with notice concerning an intent to establish aggravating factors for the purpose of sentencing and does require notice to a defendant in certain circumstances. However, as noted by the North

21

Carolina Court of Appeals on direct review, Petitioner received a sentence in the presumptive range for the crimes he committed, not an aggravated sentence. Byrd, 2017 WL 5146814 at *5. Therefore, Petitioner cannot have been harmed by any lack of notice under § 15A-1340.16(a6) because he did not receive an aggravated sentence.  As for § 14-208.20, that statute does require notice and other procedures if the State intends to have a defendant classified as a "sexually violent predator."  Such a person is then subject to certain additional registration requirements. See N.C. Gen. Stat. §§ 14-208.21. However, being labeled as a "sexually violent predator" is not the only way that such requirements apply. They also apply to "a person who is a recidivist, or a person who is convicted of an aggravated offense." Id. A review of the transcript from Petitioner's sentencing reveals that the State argued that Petitioner should be subject to the additional reporting requirements because he committed a sexually violent offense which counted as an aggravated offense and because Petitioner was a recidivist. (State's Exhibits, Ex. 4, Trial Tr. Vol. 5 at 1054.) The trial court then imposed the additional registration requirements for those reasons. Neither the State nor the sentencing judge used the term "sexually violent predator" and it does not appear the trial court imposed the requirements on that basis. (Id. at 1055-57.) However, to any extent that there may be confusion, the fact that Petitioner was a recidivist and convicted of an aggravated offense would have subjected him to the additional requirements under §14-208.21 regardless of his status as a sexually violent predator. In no way could he have been prejudiced by any lack of notice and his claim to the contrary should be denied.

22

## 9. Claim Ten--Denial of Right to Use Exculpatory Evidence

Petitioner's tenth claim states that the trial judge refused to allow Petitioner "to use [his] own DNA results to establish reasonable doubt and advised [Petitioner] that the only mentioned [sic] as to any DNA evidence would be made by the prosecutor being allowed to tell [the] trial jury that . . . the[re] was no DNA evidence." (Petition, Attach.) Petitioner also claims that the trial judge refused to allow him to submit evidence that the victim had contracted a sexually transmitted disease from her grandfather or another church member who was also a registered sex offender and that Petitioner did not have that disease. He additionally claims that the prosecution and police prevented him from subpoenaing medical records that would have allowed him to track the possible source of the disease. (Id.)

This claim is, for the most part, another challenge to evidentiary decisions by the trial court. As noted previously, state court decisions regarding the admission of evidence do not state a claim absent "circumstances impugning fundamental fairness or infringing specific constitutional protections." Grundler, 283 F.2d at 802. Here, the State readily admitted during Petitioner's trial that it recovered none of Petitioner's DNA from the victim despite DNA sampling and testing. (State's Exhibits, Ex. 4, Trial Tr. Vol. 4 at 857.) Therefore, no DNA evidence even existed which Petitioner could hope to combat or contradict at trial. He points to no specific constitutional protection that was violated and there certainly was no fundamental unfairness in not allowing Petitioner to contest nonexistent evidence. As for question of the victim's sexually transmitted disease, Petitioner only theorizes as to other possible sources of that disease. However, even if he could prove another possible source,

23

that fact would not have exonerated him. As the State and the North Carolina Court of Appeals point out, Petitioner was caught alone with the victim in a darkened church kitchen by the victim's relatives. Both his and the victim's clothing was disheveled and the victim was crying. She immediately stated that Petitioner had just raped her and testified to that fact at Petitioner's trial. The fact that another person may have assaulted the victim at a different time or otherwise infected her with a sexually transmitted disease would have in no way exonerated Petitioner. Therefore, the exclusion of this evidence and any denial of access to the medical records of third persons, did not prejudice Petitioner. His tenth claim for relief should also be denied.

### 10. Claim Eleven

As stated above, Petitioner also raised an eleventh claim in his Amended Petition which appears to be an amalgamation of several of his other claims. As also discussed above, all of those claims fail and should be denied. Petitioner also complains that his own statements were used against him in violation of the Confrontation Clause. However, a parties' own statements do not implicate the Confrontation Clause, which deals with statements made by non-parties. Therefore, Petitioner's eleventh claim for relief should also be denied.

### V. Conclusion

In the end, the Petitioner is not entitled to relief because his claims are procedurally barred, they were decided by the state courts in a manner not contrary to or involving an unreasonable application of established Supreme Court precedent, they are not supported by the record, and/or they do not otherwise state a viable claim for relief. For this reason,

24

Respondent's Motion for Summary Judgment should be granted and Petitioner's Motion for Summary Judgment should be denied.

IT IS THEREFORE ORDERED that Petitioner's Motion to Amend [Doc. #28] is granted to the extent that the Court has considered his amended Response.

IT IS FURTHER ORDERED that Petitioner's Motion [Doc. #29] seeking to file or have his claims considered under 28 U.S.C. § 2241 is denied.

IT IS RECOMMENDED that Petitioner's Motion for Summary Judgment [Doc. #24] be denied, that Respondent's Motion for Summary Judgment [Doc. #17] be granted, that the Petition be denied, and that judgment be entered dismissing this action.

This, the 30th day of August, 2019.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge
